Filed 8/18/11

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S182263 |
| v. | ) | |
| | ) | Ct.App. 3 C058326 |
| GEORGE MILWARD, | ) | |
| | ) | Sacramento County |
| Defendant and Appellant. | ) | Super. Ct. No. 02F05876 |
| _____ | ) | |

While serving a life sentence, defendant attacked another inmate with a deadly weapon. He was convicted of two crimes: (1) assault with a deadly weapon or by means likely to inflict great bodily injury by a prisoner serving a life sentence (Pen. Code, § 4500; hereafter aggravated assault by a life prisoner),[1] and (2) assault with a deadly weapon other than a firearm or by means likely to inflict great bodily injury (§ 245, subd. (a)(1); hereafter aggravated assault).

Defendant argues that the conviction for aggravated assault must be reversed because that offense is lesser than, and necessarily included within, the offense of aggravated assault by a life prisoner. We agree. Because the Court of Appeal reached a contrary conclusion, we reverse that court's judgment.

---

[1] All statutory citations are to this code.

1

# I

On June 16, 2001, Donald Jones, a correctional officer at Folsom State Prison, saw two life prisoners — Ernesto Torres and defendant George Milward — attack inmate Ricardo Gonzales.  When the attackers ignored Jones's order to lie down, he fired nonlethal rubber bullets at them, but they continued their attack on Gonzales.  After Jones's fourth shot appeared to have hit defendant's leg, defendant backed away from Gonzalez and lay on the ground, as ordered by Jones. When defendant was allowed to get up, he threw something over the wall.  Jones retrieved the item, which he described as an "inmate-manufactured razor-type weapon."  Another inmate-made weapon, which had a cylindrical end that was sharpened like an ice pick, was found in the grass near the scene of the attack on inmate Gonzales.  Gonzales had slash wounds (consistent with the weapon thrown by defendant) as well as puncture wounds (consistent with the weapon found in the grass).

Defendant was charged in count one with aggravated assault by a life prisoner (§ 4500), in count two with possession of a sharp instrument by a prisoner (§ 4502, subd. (a)), and in count three with aggravated assault (§ 245, subd. (a)(1)).  As a sentence enhancement to count one, it was alleged that defendant had personally inflicted great bodily injury on inmate Gonzales (§ 12022.7, subd. (a)).  It was further alleged that defendant had two prior serious felonies (§ 1192.7) that were "strikes" under the three strikes law (§§ 667, subd. (b)-(i), 1170.12).  A jury found defendant guilty of counts one and three, but the jury was unable to reach a

verdict as to count two.[2]  Thereafter, a separate jury found the prior felony allegations to be true.

The trial court sentenced defendant to life imprisonment with 27 years of parole ineligibility on count one (aggravated assault by a life prisoner), plus a consecutive term of five years for one of the two prior serious felony convictions, both sentences to run consecutively to the life term that defendant was already serving when he committed the crimes in this case.  On count three (aggravated assault) the court imposed a concurrent term of 25 years to life, plus five years on the other prior conviction.

On appeal, defendant argued that his conviction for aggravated assault should be vacated because it is a lesser offense included within the greater crime of aggravated assault by a life prisoner, of which he was also convicted.  The Court of Appeal, rejecting the concession of this issue by the Attorney General, upheld the conviction.

The Court of Appeal noted our decision in *People v. Noah* (1971) 5 Cal.3d 469, 477 (*Noah*), which held that aggravated assault (§ 245, subd. (a)) was a lesser offense included within the crime of aggravated assault by an inmate not serving a life sentence (§ 4501).  The Court of Appeal acknowledged that "*Noah* applies to section 4500 [aggravated assault by a life prisoner] equally as it applies to section 4501 [aggravated assault by a non-life prisoner]; that is, *Noah* compels the conclusion that aggravated assault by a life prisoner could not be committed without committing aggravated assault *as then proscribed* by section 245, subdivision (a)."  The Court of Appeal pointed out, however, that in 1982, 11

---

[2]  Like defendant, codefendant Torres was charged with aggravated assault by a life prisoner and with aggravated assault, but the jury was unable to reach a verdict on either charge.

3

years after *Noah*, an amendment by the Legislature "materially changed" the version of section 245's subdivision (a) at issue in *Noah*. Thus, the Court of Appeal held, *Noah*'s interpretation is "no longer . . . binding."

The Court of Appeal concluded that the 1982 amendment created two separate crimes: the offense of aggravated assault, which is committed with "a deadly weapon or instrument *other* than a firearm" (§ 245, subd. (a)(1), italics added) and assault "with a firearm" (§ 245, subd. (a)(2)). The Court of Appeal reasoned: "[A]ggravated assault as provided by section 245, subdivision (a)(1) *cannot* be committed with a firearm, because assaults with firearms are explicitly excluded from that offense. However, aggravated assault by a life prisoner as provided by section 4500 *can* be committed with a firearm, a type of deadly weapon. Therefore, if a life prisoner committed an assault *with a firearm*, she or he would violate section 4500, but would *not violate* section 245, subdivision (a)(1). Therefore, the latter is not included within the former." We granted defendant's petition for review.

## II

As mentioned earlier, defendant, a life prisoner, attacked fellow inmate Gonzales. A jury found him guilty of the crime of aggravated assault by a life prisoner and the crime of aggravated assault. Both convictions were based on the same conduct, namely, defendant's attack on Gonzales. At issue is whether defendant could lawfully be convicted of both of these crimes or only one of them.

Generally, there is no limit to the number of convictions arising from a defendant's act or course of conduct. (§ 954.) But an exception exists for lesser included offenses. "[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former." (*People v. Lopez* (1998) 19 Cal.4th 282, 288.) In such cases, a defendant may not be convicted of both the greater and the lesser offense. (*People v. Reed*

4

(2006) 38 Cal.4th 1224, 1227.)  Whether defendant's two convictions — for aggravated assault by a life prisoner (§ 4500) and for aggravated assault (§ 245, subd. (a)(1)) — violates that rule is at issue here.

Section 4500 sets forth the elements as well as the punishment for the crime of aggravated assault *by a life prisoner*:  "Every person while undergoing a life sentence . . . who, with malice aforethought, commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury is punishable with death or life imprisonment without possibility of parole [if the victim dies as a result of the attack within a year and a day after it occurs, and otherwise by] imprisonment . . . for life without the possibility of parole for nine years."

As to the crime of aggravated assault, section 245's subdivision (a)(1) states:  "Any person who commits an assault upon the person of another with a deadly weapon or instrument *other than a firearm* or by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year . . . ."  (Italics added.)  And section 245's subdivision (a)(2) provides:  "Any person who commits an assault upon the person of another *with a firearm* shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not less than six months and not exceeding one year . . . ."  (Italics added.)  As noted earlier (see pp. 3-4, *ante*), subparagraphs (1) and (2) were enacted by a 1982 amendment of section 245 (Stats. 1982, ch. 136, § 1, p. 437).

Previously, the Legislature had made no distinction between aggravated assaults committed with a firearm and those committed by other means.  Back then, section 245's subdivision (a) provided:  "Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable by imprisonment

5

in the state prison for two, three or four years, or in a county jail not exceeding one year . . . ." (Stats 1976, ch. 1139, § 152.5, p. 5105.)  In amending that provision in 1982 to create subparagraphs (1) and (2), the Legislature's apparent purpose was to require a *minimum* punishment of six months' imprisonment in county jail for aggravated assaults committed with a firearm (§ 245, subd. (a)(2)), but not for aggravated assaults committed by other means (§ 245, subd. (a)(1)).

Defendant asserts that the offenses described in section 245's subdivision (a)(1) (assault with a deadly weapon other than a firearm or by means likely to inflict great bodily injury) and subdivision (a)(2) (assault with a firearm) should be considered not in isolation but together as constituting one crime, that of aggravated assault, and that so construed the "crime" is a lesser offense necessarily included within the crime of aggravated assault by a life prisoner (§ 4500).  (See generally *People v. Ortega* (1998) 19 Cal.4th 686, 694-699 [the traditional crime of theft, including both petty theft and grand theft, is necessarily included within the crime of robbery]; *People v. Ryan* (2006) 138 Cal.App.4th 360, 364 [when the Legislature divided § 470, defining the traditional crime of forgery, into subdivisions, it described "different ways of committing a single offense, i.e., forgery"].)  We need not decide whether defendant's assertions are correct, because we conclude that the offense described in section 245's subdivision (a)(1), which defendant was convicted of violating, is by itself necessarily included within the greater crime of aggravated assault by a life prisoner (§ 4500).

As explained earlier (see p. 4, *ante*) a crime is a lesser offense necessarily included within a greater crime only if it is impossible to commit the greater crime without also committing the lesser.  The Court of Appeal here reasoned that if a life prisoner committed an aggravated assault *with a firearm*, the prisoner would be guilty of the crime of aggravated assault *by a life prisoner* (§ 4500) without

6

also being guilty of violating section 245's subdivision (a)(1), because the latter provision states that it applies to an aggravated assault committed by a deadly weapon "other than a firearm." Therefore, the Court of Appeal concluded, the latter offense is not a lesser offense necessarily included within the greater offense of aggravated assault by a life prisoner.

The Court of Appeal would be right if the statutory phrase "other than a firearm" appearing in section 245's subdivision (a)(1) were an element of the aggravated assault described in that subdivision. But we do not so construe the statutory language, as explained below.

Pertinent here is our decision in *People v. Rios* (2000) 23 Cal.4th 450 (*Rios*). The defendant in that case was initially charged with murder. At his first trial, the jury acquitted him of that crime, but it could not reach a verdict on the lesser included offense of voluntary manslaughter. Because of the acquittal on the murder charge, the defendant could not be retried for that offense (U.S. Const., 5th Amend. ["nor shall any person be subject for the same offense to be twice put in jeopardy"]), but he could be, and was, retried on the charge of voluntary manslaughter.

Whereas murder is an "unlawful killing . . . *with malice* aforethought" (§ 187, italics added), manslaughter is an "unlawful killing . . . *without malice*" (§ 192, italics added). Malice is negated when the defendant kills as a result of provocation or in "imperfect self-defense." (*Rios*, *supra*, 23 Cal.4th at p. 467.) At the retrial in *Rios*, the trial court did not instruct the jury on provocation or imperfect self-defense. The jury found the defendant guilty of voluntary manslaughter. On appeal, the defendant in *Rios* argued, in essence, that because the jury was never instructed on provocation and imperfect self-defense, it never determined whether he had acted without malice, and that absence of malice was a

7

necessary element of manslaughter. The Court of Appeal in *Rios* rejected the defendant's contention, and we granted review.

In *Rios*, we agreed with the Court of Appeal that the trial court was right in not instructing the jury that the absence of malice, as shown by provocation or imperfect self-defense, was an element of voluntary manslaughter. We explained: "[T]he People must establish malice . . . as an essential element of murder. However, they need not prove the *absence of malice*, the issue to which provocation and imperfect self-defense are relevant, in order to convict the defendant of the lesser included offense of manslaughter." (*Rios*, *supra*, 23 Cal.4th at p. 469, italics added, original italics deleted.) Otherwise, *Rios* said, juries would face a dilemma: "A fact finder doubtful that provocation or imperfect self-defense was lacking, but also not persuaded beyond reasonable doubt that either was present, could convict the defendant of *neither* murder *nor* voluntary manslaughter, even though it found the defendant had killed intentionally, without justification or excuse. Such a result would turn the law of criminal homicide on its head." (*Id.* at p. 462.)

Although section 192 defines manslaughter as an "unlawful killing . . . *without malice*" (italics added), the statutory phrase "without malice" is, under *Rios*, *supra*, 23 Cal.4th at page 469, *not* an element of manslaughter, for the reasons explained in the preceding paragraph; rather, it serves only to distinguish manslaughter from the greater crime of murder. Therefore, a defendant who commits an unlawful killing *with malice* can be convicted of manslaughter.

For similar reasons, here the statutory phrase "other than a firearm" is not an element of section 245's subdivision (a)(1), which punishes an assault with a deadly weapon "other than a firearm" or by means likely to inflict great bodily injury; a defendant who commits an assault *with a firearm* violates that subdivision. To conclude otherwise could create for juries a dilemma similar to

8

the one noted in *Rios*, *supra*, 23 Cal.4th at page 462, and discussed by us here at page 8, *ante*.

For instance, if a defendant committed an assault with a deadly weapon, and the jury was uncertain (because of conflicting evidence) whether the weapon was a firearm, that jury could not convict the defendant of assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1)), because it had not been established "beyond a reasonable doubt" (the prosecution's burden of proof) that the weapon used was "a deadly weapon . . . *other* than a firearm" (the phrase used in section 245's subdivision (a)(1)). Nor could the jury in our hypothetical convict the defendant of assault *with* a firearm (§ 245, subd. (a)(2)), because of the conflicting evidence on whether the weapon was actually a firearm.

To avoid placing a jury in that quandary, we conclude as follows: The statutory language in section 245's subdivision (a)(1) that pertains to an assault with a deadly weapon "other than a firearm" is not an element of the crime there described (aggravated assault). The quoted statutory phrase serves simply to distinguish an assault so committed from the slightly more serious offense of assault "with a firearm," as set forth in section 245's subdivision (a)(2). Consequently, when, for instance, a jury is convinced beyond a reasonable doubt that the defendant assaulted the victim with a deadly weapon, but because of conflicting evidence is uncertain whether the weapon was indeed a firearm, the jury can convict the defendant of aggravated assault, the crime set forth in section 245's subdivision (a)(1).

Having just concluded that the phrase "other than a firearm" in section 245's subdivision (a)(1) is not an element of the crime defined in that subdivision, we further conclude that the crime defined in that subdivision is an offense necessarily included within the greater offense set forth in section 4500, which punishes a defendant who, "while undergoing a *life sentence* [and] with malice

9

aforethought, commits an assault . . . with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury." (Italics added.) Our reasons follow.

Earlier, we mentioned (see *ante*, at p. 4), that a crime is necessarily included within a greater crime if the greater crime "cannot be committed without also necessarily committing" the lesser offense. By its terms, section 245's subdivision (a)(1) is violated when the defendant commits an "assault," either "with a deadly weapon or instrument," or by "force likely to produce great bodily injury." That language is identical to the language in section 4500 punishing a *life prisoner* for committing "an assault . . . with a deadly weapon or instrument, or by . . . force likely to produce great bodily injury." (§ 4500 is the greater offense because the minimum sentence for a defendant who violates that section is a term of life imprisonment without the possibility of parole for nine years, whereas the maximum sentence for a violation of § 245's subd. (a)(1) is a four-year prison term.) Thus, every element of the crime described in section 245's subdivision (a)(1) is also an element of the crime set forth in section 4500, and consequently every defendant who violates section 4500 necessarily also violates the lesser offense described in section 245's subdivision (a)(1).

The law prohibits simultaneous convictions for both a greater offense and a lesser offense necessarily included within it, when based on the same conduct. (*People v. Reed*, *supra*, 38 Cal.4th at p. 1227.) "When the jury expressly finds defendant guilty of both the greater and lesser offense . . . the conviction of [the greater] offense is controlling, and the conviction of the lesser offense must be reversed." (*People v. Moran* (1970) 1 Cal.3d 755, 763.) Here, the jury convicted defendant of violating — based on the same conduct —section 4500 and section 245's subdivision (a)(1). Because, as explained earlier, the latter is a lesser

offense necessarily included within the former, the Court of Appeal erred in not reversing the conviction for the lesser offense (§ 245, subd. (a)(1)).

## DISPOSITION

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court with directions to reverse defendant's conviction for assault with a deadly weapon or instrument other than a firearm or by means of force likely to inflict great bodily injury (§ 245, subd. (a)(1)).


KENNARD, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
BAXTER, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
KING, J.*

---

\*     Associate Justice of the Court of Appeal, Fourth Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Milward

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 182 Cal.App.4th 1477
**Rehearing Granted**

_____

**Opinion No.** S182263
**Date Filed:** August 18, 2011

_____

**Court:** Superior
**County:** Sacramento
**Judge:** Patricia C. Esgro

_____

**Counsel:**

Valerie G. Wass, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French, David A. Rhodes and Ivan P. Marrs, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Valerie G. Wass
556 South Fair Oaks Avenue, Suite 9
Pasadena, CA 91105
(626) 797-1099

Ivan P. Marrs
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA 94244-2550
(916) 324-0069